## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RANDY TURNER**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 20-3469**

**E. DUSTIN BICKHAM, WARDEN**                       **SECTION "E"(4)**
**RAYBURN CORRECTIONAL CENTER**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.    Factual and Procedural Background

Petitioner Randy Turner ("Turner") is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On January 28, 2016, Turner was charged by Bill of Information in Terrebonne Parish with aggravated flight from an officer where human life was endangered.[3] He pleaded not guilty to the charges that same day.[4]

The record reflects that, on January 8, 2016, at approximately 11:00 p.m., Terrebonne Parish Sheriff's Office Deputy Joseph Creppell was parked in a marked police unit at a shopping

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] ECF No. 1, at 1.

[3] St. Rec. Vol. 1 of 4, Bill of Information, 1/28/16.

[4] St. Rec. Vol. 1 of 4, Minute Entry, 2/22/16.

center located on Alma Street in Houma, Louisiana.[5]  While facing Hollywood Road and Monarch Drive, Deputy Creppell observed a red truck, being driven by Turner, roll through a stop sign.  He followed the truck and activated his lights and siren as the truck made a left turn onto Alma Street. Deputy Creppell continued to follow the truck as it turned right onto Ninth Street.  At that point, according to Deputy Creppell, Turner pulled the truck over to the side of the road, but then reentered the roadway and continued driving on Ninth Street.  Turner then turned left at one corner and approached a stop sign at Morrison Avenue.  Turner did not stop at the sign and instead turned right turn on Morrison Avenue.  According to the deputy, Turner was driving approximately 45 miles per hour when he failed to obey a second stop sign and turned left onto Rightor Street.  The deputy noticed that Turner was increasing in speed and approaching the rear of another vehicle that was driving in the same direction in the same lane of travel.  That vehicle moved over toward the grass along the side of the road, and Turner crossed over into the other lane to veer around the vehicle.  Turner then failed to obey a third stop sign and made a right turn on McKinley Street, where his passenger exited the truck.  Turner exceeded fifty miles per hour while driving on McKinley Street, which is posted for 25 miles per hour.  Turner did not stop at fourth stop sign at Robbie Street.  According to Deputy Creppell, Turner repeatedly drove down the middle of the various roadways during the pursuit.  When Turner finally came to a stop at West Park and McKinley Streets, Deputy Creppell exited his police unit, ordered Turner to exit his truck, and placed Turner under arrest.  According to Deputy Creppell, when asked why he would not stop, Turner responded that he thought he had outstanding arrest warrants.  Turner also denied speeding or failing to obey any stop signs and claimed that he stopped at every traffic light.

---

[5] The facts are taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Turner*, No. 2017-1648, 2018 WL 1735940, at *1 (La. App. 1st Cir. Apr. 11, 2018), *reversed on other grounds*, 283 So.3d 997 (La. 2019); St. Rec. Vol. 1 of 4, 1st Cir. Opinion, 2017-KA-1648, pp. 2-3, 4/11/18.

Turner was tried before a jury on January 18 and 19, 2017, and found guilty as charged.[6] At an April 19, 2017, hearing, the state trial court denied Turner's motions for new trial and for post-verdict judgment of acquittal.[7]  At the same hearing, the State filed a multiple offender bill charging Turner as a fourth or more felony offender, and Turner entered a plea of not guilty.[8]  On June 30, 2017, following a two day hearing, Turner stipulated to the multiple bill and the state trial court sentenced him as eighth felony offender to serve 40 years in prison without benefit of parole, probation, or suspension of sentence.[9]  The state trial court denied Turner's motion to reconsider the sentence on August 31, 2017.[10]

On direct appeal to the Louisiana First Circuit Court of Appeal, Turner's appointed counsel asserted two errors:[11] (1) the state trial court erred in allowing the State to argue to the jury that they could use the same aggravating element if it occurred twice to find Turner guilty; and (2) the evidence was insufficient to support the conviction.  In his *pro se* supplemental brief, Turner asserted two additional errors:[12] (1) the evidence of flight, concealment, and attempt to avoid apprehension was insufficient and necessary to prove the charge of aggravated flight from an officer; and (2) the state trial court gave an improper instruction to the jury on application of the statutory factors that can establish reasonable doubt as to the aggravating component of the charge.

---

[6] St. Rec. Vol. 1 of 4, Trial Minutes, 1/18/17; Trial Minutes, 1/19/17; Jury Verdict, 1/19/17; St. Rec. Vol. 2 of 4, Trial Transcript, 1/18/17; Trial Transcript, 1/19/17.

[7] St. Rec. Vol. 1 of 4, Hearing Minutes, 4/19/17; Motion for New Trial, 1/24/17; Motion for Post-Verdict Judgment of Acquittal, 1/24/17; St. Rec. Vol. 2 of 4, Hearing Transcript, 4/19/17.

[8] St. Rec. Vol. 1 of 4, Hearing Minutes, 4/19/17; Multiple Bill, 4/19/17.

[9] St. Rec. Vol. 1 of 4, Sentencing Minutes, 6/30/17; Hearing Minutes, 6/28/17; St. Rec. Vol. 2 of 4, Sentencing Transcript, 6/30/17; Sentencing Hearing Transcript, at 8-9, 6/28/17.

[10] St. Rec. Vol. 1 of 4, Hearing Minutes, 8/31/17; Motion to Reconsider Sentence, 7/13/17.

[11] St. Rec. Vol. 1 of 4, Appeal Brief, 2017-KA-1648, at 2, 12/22/17.

[12] St. Rec. Vol. 1 of 4, *Pro Se* Supplemental Brief, 2017-KA-1648, at 1, 1/17/18.

On April 11, 2018, the Louisiana First Circuit reversed Turner's conviction and vacated his habitual offender adjudication and sentence.[13]  The Court first found meritless the claims of insufficient evidence asserted by Turner and his counsel.  However, the Court found error in the state trial court's instruction to the jury that they could find two instances of the same aggravating factor to satisfy the two or more aggravating component of the statute.  Based on this, the Court reversed the conviction.

On November 20, 2018, however, the Louisiana Supreme Court granted the State's writ application.[14]  After review of the record, on May 8, 2019, the Court issued its reasoned opinion reversing the Louisiana First Circuit and reinstated Turner's conviction and sentence. [15]  The Court held that the state trial court did not err in interpreting the statute or in its instructions to the jury. The Court also denied Turner's application for rehearing on June 26, 2019.[16]

Turner's conviction and sentence became final 90 days later, on September 24, 2019, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).[17]

In the meantime, on September 5, 2019, Turner signed and submitted to the state trial court an application for post-conviction relief in which he asserted that he was denied effective assistance of counsel when his trial counsel: (1) failed to object or move to quash the bill of information which denied him the right to later challenge the bill, and (2) failed to object to the

---

[13] *Turner*, 2018 WL 1735940 at *1; St. Rec. Vol. 1 of 4, 1st Cir. Opinion, 2017-KA-1648, 4/11/18.

[14] *State v. Turner*, 257 So.3d 184 (La. 2018); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2018-K-0780, 11/20/18; St. Rec. Vol. 4 of 4, State's La. S. Ct. Writ Application, 18-K-0780, 12/17/18.

[15] *State v. Turner*, 283 So.3d 997 (La. 2019); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2018-K-0780, 5/8/19.

[16] *Turner*, 283 So.3d at 997; St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2018-K-0780, 6/26/19; St. Rec. Vol. 4 of 4, Request for Rehearing, 18-K-780, 5/28/19 (dated 5/21/19).

[17] *See also* La Code Crim. P. art. 922(B), (C) (judgment is final when rehearing is denied).

State's use of one aggravating factor that occurred twice to satisfy the statutory requirement that two factors be met, which deprived him of a fair trial.[18]  The state trial court denied the application without stated reasons on September 27, 2019.[19]

On January 16, 2020, the Louisiana First Circuit denied Turner's related writ application without stated reasons.[20]  The Louisiana Supreme Court, on September 8, 2020, denied Turner's subsequent writ application because he failed to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).[21]

While the post-conviction application was pending, on November 7, 2019, Turner filed with the state trial court a motion to correct his sentence.[22]  The state trial court appointed Turner counsel and, at a hearing held February 12, 2020, denied the motion finding no error in the sentencing.[23]  The Louisiana First Circuit denied Turner's *pro se* writ application on April 28, 2020, without stated reasons.[24]  The Louisiana Supreme Court also denied Turner's writ application on September 8, 2020.[25]

Soon thereafter, on December 11, 2020, Turner filed another motion to correct his sentence.[26]  The state trial court denied the motion as moot on December 14, 2020 referencing its

---

[18] St. Rec. Vol. 1 of 4, Application for Post-Conviction Relief, 9/17/19 (dated 9/5/19); Memorandum in Support, at 8, 9/17/19 (dated 9/5/19).

[19] St. Rec. Vol. 1 of 4, Trial Court Order, 9/27/19.

[20] *State v. Turner*, No. 2019-KW-1451, 2020 WL 261819, at *1 (La. App. 1st Cir. Jan. 16, 2020); St. Rec. Vol. 1 of 4, 1st Cir. Order, 2019-KW-1451, 1/16/20; St. Rec. Vol. 3 of 4, 1st Cir. Writ Application, 2019-KW-1451, 10/28/19 (signature not dated, postmarked 10/28/19).

[21] *State v. Turner*, 301 So.3d 12 (La. 2020); St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2020-KH-00279, 9/8/20.

[22] St. Rec. Vol. 1 of 4, Motion to Correct an Illegal Sentence, 11/13/19 (dated 11/7/19).

[23] St. Rec. Vol. 1 of 4, Hearing Minutes, 2/12/20; St. Rec. Vol. 2 of 4, Hearing Transcript, at 16, 2/12/20.

[24] *State v. Turner*, No. 2020-KW-0274, 2020 WL 2061480, at 81 (La. App. 1st Cir. Apr. 28, 2020); St. Rec. Vol. 1 of 4, 1st Cir. Order, 2020-KW-0274, 4/28/20; St. Rec. Vol. 3 of 4, 1st Cir. Writ Application, 2020-KW-0274, 3/9/20 (dated 3/6/20).

[25] *State v. Turner*, 301 So.3d 32 (La. 2020).  The State did not include this writ application, No. 2020-KH-625, in the state court record.

[26] St. Rec. Vol. 1 of 4, Motion to Correct Illegal Sentence, 12/11/10.

February 12, 2020 ruling.[27]  The Louisiana First Circuit denied his related writ application on April 26, 2021, because Turner failed to meet his burden and finding no error in the trial court's ruling.[28]

## II.    **Federal Petition**

On October 26, 2020, the clerk of the United States District Court for the Middle District of Louisiana filed Turner's federal petition for habeas corpus relief in which he asserts the following grounds for relief:[29] (1) he was denied due process of law by the state courts' interpretation and application of the statute on aggravated flight from an officer; and (2)(a) the state trial court's jury instruction was unconstitutionally infirm in its application of the statutory factors that can establish reasonable doubt as to the aggravating component of the charge, and (b) counsel was ineffective for failing to object to the instruction.

The matter was transferred to this Court and briefing was ordered.[30]  The State filed a response in opposition to Turner's petition asserting that the petition was timely filed and state court review has been exhausted.[31]  The State also contends that Turner's claims are meritless, and he has failed to show that the state courts' rulings were contrary to federal law.  In addition, the State argues that Turner's ineffective assistance of counsel argument is baseless because the issue of the statutory interpretation was argued extensively at trial.

Broadly construing his response to the State's opposition, Turner opposes any suggestion by the State that his claims were resolved on appeal.[32]  He contends that a new trial would be fair because legislative intent should control interpretation of the statute under which he was charged.

---

[27] St. Rec. Vol. 1 of 4, Trial Court Order, 12/14/20.

[28] *State v. Turner*, No. 2021-KW-0133, 2021 WL 1611531, at *1 (La. App. 1st Cir. Apr. 26, 2021).

[29] ECF Nos. 1, 1-1.

[30] ECF Nos. 3, 4, 7.

[31] ECF No. 12.

[32] ECF No. 13.

### III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[33] applies to Turner's petition, which is deemed filed in this Court no later than October 23, 2020.[34]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State does not challenge timeliness or exhaustion of state court review.  The Court therefore will review Turner's claims, which were addressed by the state courts on the merits.

### IV.    Standards of a Merits Review

The standard of review under the AEDPA is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2)

---

[33]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after AEDPA's effective date submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Turner dated his signature on the form petition on October 23, 2020.  ECF No. 1, at 17.  This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing to a federal court.

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Due Process (Claims 1 and 2(a))

Turner challenges the Louisiana courts' interpretation of La. Rev. Stat. Ann. § 14:108.1(D), the statute under which he was convicted. The relevant portions of the statute provide as follows:

> C.    Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense.

The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.

D.    Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts:
(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle or watercraft.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.
(5) Fails to obey a stop sign or a yield sign.
(6) Fails to obey a traffic control signal device.

Turner argues that the "at least two" language in §14:108.1(D) should have been interpreted to require that two different aggravating factors be found to have occurred for a conviction. Instead, he argues, the state trial court interpreted the statute to allow the State to argue to the jury that they could find that the multiple occurrences of one aggravating element satisfied the meaning of "at least two" to prove aggravated flight. He further complains that the state trial court then erred by instructing the jury in accordance with its allegedly erroneous interpretation of the statutory language. He also contends that the court violated the doctrine of lenity when it did not resolve the ambiguous language in his favor.

The State argues in its opposition that Turner has not shown that the statutory construction, or the jury instruction, were contrary to any federal law for purposes of federal habeas relief.

Turner's trial counsel first challenged the State's interpretation of the statute at the end of trial prior to closing arguments. Based on discussions during a jury charge conference, the State moved for the court to prohibit defense counsel from "misinterpreting" the statute and argue to the jury that two distinct factors had to be proven to meet the statutory burden of proof. The State argued that the jury could consider the multiple occurrences of a single listed aggravating factor

sufficient to meet the "at least two" language to prove aggravated flight.[35]  Turner's counsel countered with a motion to prevent the State from arguing to the jury that the repeated occurrence of one element, *i.e.* the running of several different stop signs, would suffice to satisfy the "at least two" language in the statute.[36]  Turner's counsel argued that the case law did not support the State's arguments and that if the legislature intended the statute to allow one repeated event to count, it would have stated so.[37]  After hearing argument and reviewing relevant state case law, the state trial court denied the defense motion and granted the State's motion finding that the language of the statute, and the state case law applying it, allowed for the State to rely on multiple occurrences of a single aggravating factor to satisfy its burden of proof under the statute.[38]  Turner's counsel objected to the ruling for the record.[39]

The issue was discussed again during deliberations, when the jury asked the state trial court if "under circumstances of Aggravated Flight from an Officer, he would have had to do two of the five; can he be counted with two of the same, or would he need to be charged with one of two different circumstances?"[40]  After hearing argument from counsel, the court read the original jury instruction defining the statute and supplemented it with the comment, "[i]t is sufficient to have a repeated act to constitute the two or more acts necessary to illustrate the circumstances wherein human life is endangered as required by the statute."[41]  Turner's counsel again objected, but the supplemental comment was nevertheless read to the jury.[42]

---

[35] St. Rec. Vol. 2 of 4, Trial Transcript, at 59-61, 63, 1/19/17.

[36] *Id*. at 61.

[37] *Id*. at 61-62, 64.

[38] *Id*. at 65-66.

[39] *Id* at 66.

[40] *Id*. at 88-89.

[41] *Id*. at 91, 93.

[42] *Id*. at 90, 92.

Turner's appointed counsel asserted the arguments again on direct appeal.  The Louisiana First Circuit reviewed the case law relied on by the state trial court and disagreed with that court's interpretation of the case holdings and the statute, finding that the "at least two" language in the statute meant two or more distinct factors, not repeated occurrences of one.[43]  The Court also held that the statute was to be interpreted in favor of Turner "under the principal of lenity," which as defined by Louisiana law required narrow statutory interpretation and resolution of any substantive ambiguity in favor of the accused.[44]  Based on this, the court reversed Turner's conviction.

However, the Louisiana Supreme Court reversed that decision finding that the statute was not ambiguous and, therefore, did not warrant application of the doctrine of lenity.[45]  The Court held that the statute was not ambiguous merely because it could be narrowly construed, as Turner had done.  In addition, the Court found no uncertainty in the statutory language and that the language considered in context "plainly encompasses" the commission of one act more than once.  The Court also held that the district court did not err in its instruction to the jury, reversed the appellate court, and reinstated Turner's conviction and sentence.

In his federal petition, Turner challenges as erroneous the state courts' interpretation and application of state statutory and case law and applicable principles of statutory construction, *i.e.* the doctrine of lenity, and contends that these errors led to an erroneous jury instruction, all in violation of his due process rights.  Turner's claims based on the interpretation and application of state law, however, do not state a cognizable federal habeas claim.

---

[43] *Turner*, 2018 WL 1735940 at *6; St. Rec. Vol. 1 of 4, 1st Cir. Opinion, 2017-KA-1648, at 11-12, 4/11/18.

[44] *Turner*, 2018 WL 1735940 at *6 (citing *State v. Becnel*, 674 So.2d 959, 960 (La. 1996) and *Chevalier v. L.H. Bossier, Inc.*, 676 So.2d 1072, 1076 (La. 1996)).

[45] *Turner*, 283 So.3d at 997; St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2018-K-0780, at 3-4, 5/8/19.

A federal habeas court does not sit to correct errors by state courts in interpreting and applying state law. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."). Similarly, a state court's jury instruction rooted in state law is not a basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72; *see Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) ("Improper jury instructions in state criminal trials do not generally form the basis for federal relief."). Simply put, this federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994).

The proper consideration under federal habeas law is whether an error of state law caused "prejudice of constitutional magnitude," such that the error "by itself so infected the entire trial that the resulting conviction violates due process." *Galvan*, 293 F.3d at 764-65 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *Gilmore v. Taylor*, 508 U.S. 333, 342-43 (1993); *In re Winship*, 397 U.S. 358, 364 (1970). The question of fundamental fairness under the Due Process Clause presents a mixed question of law and fact. *Wilkerson*, 233 F.3d at 890. Thus, to obtain federal habeas relief, Turner would have to show that the state court's denial of relief was contrary to or an unreasonable application of Supreme Court law, which he has not done.

While Turner invokes the phrase "due process," he points to nothing indicating the state courts' interpretation or application of the state law was actually erroneous, constitutionally infirm, or otherwise contrary to federal law. Supreme Court precedent "does not invite federal habeas courts to engage in a substantive analysis of state statutory terms. Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statute." *Ponnapula v.*

13

*Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *In re Winship*, 397 U.S. at 364; *see also Sanna v. Dipaola*, 265 F.3d 1, 12 (1st Cir. 2001) (noting that "not . . . every error of state law can be transmogrified by artful argument into a constitutional violation."). The Supreme Court has made clear that it is within the state courts' province to determine who bears the burdens of producing evidence and the burdens of persuasion on each issue in a criminal case. *Patterson v. New York*, 432 U.S. 197, 201-02 (1977); *Ponnapula*, 297 F.3d at 182 ("[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts . . . and is antecedent to the constitutional requirement that the government prove those elements beyond a reasonable doubt.").

Thus, the Supreme Court further instructs that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Supreme Court also places an "'especially heavy' burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Federal habeas is available only where "the instruction by itself so infected the entire trial that the resulting conviction violates due process." *Waddington*, 555 U.S. at 190-191 (quoting *Estelle*, 502 U.S. at 72). It is not enough that there is some "slight possibility" that the jury misapplied the instruction or the state statute. *Weeks v. Angelone*, 528 U.S. 225, 236 (2000).

The Louisiana Supreme Court's opinion on the statutory interpretation and the challenged instruction in this case evidenced a thoughtful and thorough examination of the unambiguous, plain meaning of Louisiana's aggravated flight statute, which it found to allow for multiple occurrences of one factor to meet the "at least two" requirement of the statute. Turner has

identified no authority to establish that the Louisiana Supreme Court erred in its interpretation and instead bases his arguments simply on his own conjecture and disagreement that decision.

There also is no federal precedent compelling or recognizing a federal constitutional requirement that the state court have construed the statute, or the related jury instruction, differently than it was. *See Gryger v. Burke*, 334 U.S. 728, 731 (1948) (even if the state court interpreted state law differently from what the Supreme Court might have adopted, this does not convert an alleged error of state law into the denial of due process). The doctrine or rule of lenity, recited by Turner and the state courts, is "a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Albernaz v. United States*, 450 U.S. 333, 342 (1981). Courts employ the rule of lenity as a matter of constitutional due process to ensure "that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *See United States v. Rivera*, 265 F.3d 310, 312 (5th Cir. 2001) (internal quotation marks omitted). The Supreme Court has held that the "rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a *grievous* ambiguity or uncertainty in the statute such that the Court must simply guess as to what [the legislature] intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (emphasis added) (citations and quotation marks omitted); *Maracich v. Spears*, 570 U.S. 48, 76 (2013). "The canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997). With regard to the application of the rule of lenity, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id*. at 267.

Thus, the rule of lenity is invoked in favor of the accused when there is doubt as to whether a legislature in fact meant to criminalize certain conduct or when it is unclear as to what penalty the legislature intended. However, in either circumstance, the rule of lenity is applicable *only* where there actually exists a "grievous" statutory ambiguity, and the rule "is not to be used to beget one." *Albernaz*, 450 U.S. 342. Thus, before finding such an ambiguity exists, the interpreting court must first "'seize[ ] everything from which aid can be derived,'" and only after doing so, applies lenity if "it is still 'left with an ambiguous statute.'" *Chapman v. United States*, 500 U.S. 453, 463 (1991). A statute is "grievously" ambiguous and denies an accused due process only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or . . . authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

In this case, after considering its prior case law and the terms of the statute, the Louisiana Supreme Court found no ambiguity in the aggravated flight statute, thus no need to invoke the rule of lenity. Turner, on the other hand, continues to argue that it is unclear whether the Louisiana legislature intended for the law to allow a jury to find one aggravating factor to satisfy the language that two or more of the factors constituted aggravated flight, but neither he nor his state court counsel pointed to any legislative history or other support for this argument in the state court proceedings or here. In addition, the Louisiana Supreme Court referenced and considered concepts of legislative intent and meaning in its decision.

Because there is no demonstrated ambiguity in either the statutory language, or the related jury instruction, the rule of lenity simply had no application in this case. There is no basis to find that a person of average intelligence could misunderstand the prohibited behavior indicated in the statute or that "[a] dangerous act repeated may be no less dangerous than a variety of dangerous

acts."[46]  The state statute in that regard is clear as to what conduct is prohibited to amount to or establish aggravated flight and the statute made it "reasonably clear at the relevant time that the [Turner's] conduct was criminal."  *Lanier*, 520 U.S. at 267.  The statutory language, and the language of the instructions given to the jury, was not grievously ambiguous as to offend due process principles under the foregoing federal precedent.

Turner has not shown that the analysis by the Louisiana Supreme Court or its legal conclusions were contrary to federal law or the rule of lenity as defined by the Supreme Court precedent cited above.  The Louisiana Supreme Court's interpretation of state law is binding on this habeas court, and its ruling demonstrates no constitutional error which would stand to convert Turner's mere challenge to that interpretation into a due process claim.  Turner, therefore, has failed to establish that the denial of relief was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

## VI.    **Effective Assistance of Counsel**

Turner alleges that he received ineffective assistance of counsel when his counsel failed to challenge the state trial court's interpretation of the aggravated flight statute and jury instruction to allow for the recurrence of a single aggravating factor to satisfy the two or more provision of the statute.  The State argues that the claim is without merit because the issue was argued before the state trial court.

Turner asserted this claim in his 2019 state court post-conviction application.  The state trial court and the Louisiana First Circuit denied his application and related writ application, respectively, without stated reasons.  In its reasoned opinion, the Louisiana Supreme Court denied relief finding that Turner failed to meet the burden under *Strickland*.

---

[46] *Turner*, 283 So.3d at 997; St. Rec. Vol. 1 of 4, La. S. Ct. Order, 2018-K-0780, 5/8/19.

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Andrus v. Texas*, __ U.S. __, 140 S. Ct. 1875, 1881 (2020). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven

otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Andrus*, 140 S. Ct. at 1881; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112.  To determine whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."

*Harrington*, 562 U.S. at 105.  The *Harrington* Court went on to recognize the high level of

deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so.  The *Strickland*
> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas
> courts must guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is
> not whether counsel's actions were reasonable.  The question is whether there is
> any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal

courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard

through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting

*Knowles*, 556 U.S. at 121 n.2).  This Court must also apply the "strong presumption" that counsel's

strategy and defense tactics fall "within the wide range of reasonable professional assistance."

*Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly

proven otherwise by the petitioner.  *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*,

194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every

effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.

*Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83

(5th Cir. 2000).  Tactical decisions, when supported by the circumstances, are objectively

reasonable and do not amount to unconstitutionally deficient performance.  *Lamb v. Johnson*, 179

F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and

*Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The Court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

In this case, Turner's claim with regard to counsel is one sentence buried in his discussion of the doctrine of lenity and the state trial's interpretation of the aggravated flight statute:[47]

> Mr. Turner avers that counsel's failure to object was so serious that counsel was not performing as counsel as guaranteed by the Sixth Amendment to the United States Constitution.

Turner bases his argument on a clear mistake of fact about his counsel's performance in that his statement that his counsel "fail[ed] to object" is not supported by the record.

The record plainly shows that Turner's counsel objected to and challenged the prosecutor's argument that the statute allowed for the repeated occurrence of a single aggravating factor to prove aggravated flight.[48] Turner's counsel also reiterated the objection for the record when the state trial court adopted that interpretation and prohibited the defense from arguing otherwise.[49] Turner's counsel again objected and challenged the state trial court's decision to supplement its instructions to the jury the statement that the recurrence of a single factor satisfied the "at least two" language.[50] The court clearly gave the supplemental instruction "subject to the objection."[51]

Turner therefore has failed to establish a deficient performance by his trial counsel because his counsel did object as he suggests counsel should have done. His counsel objected at each turn to the state trial's interpretation and instruction. His counsel's repeated objections and legal

---

[47] ECF No. 1-1, at 7.

[48] St. Rec. Vol. 2 of 4, Trial Transcript, at 59-66, 1/19/17.

[49] *Id*. at 66.

[50] *Id*. at 89-91.

[51] *Id*. at 92.

arguments preserved the interpretation and jury charge issues for appeal, where the claims were asserted and considered by the higher state courts.  Turner's failure to show a deficient performance by his trial counsel fails to satisfy *Strickland*.

For these reasons, the state courts' denial of relief was neither contrary to or an unreasonable application of *Strickland*.  Turner is not entitled to relief on this claim.

## VII.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Turner's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[52]

New Orleans, Louisiana, this <u>2nd</u> day of June, 2021.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[52]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.